IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **MICHELLE KEYLON** and **ALEXUS GERDES**, individually and on behalf of all other similarly situated individuals,<br><br>    **Plaintiff,**<br><br>v.<br><br>**NELNET, INC.,**<br><br>    **Defendant.** | Civil Action No.<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND** |

## COMPLAINT – CLASS/COLLECTIVE ACTION

Plaintiffs Michelle Keylon and Alexus Gerdes, individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Class/Collective Action Complaint against Defendant Nelnet, Inc., and states as follows:

### INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs Michelle Keylon and Alexus Gerdes (hereinafter referred to as "Plaintiffs"), individually and on behalf of all similarly situated persons employed by Defendant Lowe's Companies, Inc. (hereinafter referred to as "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; and for common law breach of contract and unjust enrichment.

2. Defendant is a United States-based conglomerate that deals in the administration and repayment of student loans and education financial services, among other things. According to their website, Defendant maintains four distinct business segments: Nelnet Business Services, Nelnet Communication Services, Nelnet Diversified Services, and Nelnet Financial Services. *See*, https://nelnetinc.com/about/ (last visited on 5/20/20).

1

3. In order to service its customers, Defendant employs hourly customer service advisors at brick-and-mortar call centers throughout the country (hereinafter referred to collectively as "CSAs"). Specifically, the locations of Defendant's call centers, include (but are not limited to): Lincoln, Nebraska; Omaha, Nebraska; Aurora, Colorado; Fort Morgan, Colorado; and Madison, Wisconsin.

4. Defendant's website boasts that "Nelnet's #1 core value is providing superior customer experiences, and we can't do that without a robust team of customer support professionals. These associates deal in everything from student loan servicing to home improvement contractors." *See*, https://nelnetinc.com/careers/job-opportunities/ (last visited on 5/20/20).

5. As evidenced by the uniform position descriptions on Defendant's website[1], the CSAs all perform essentially the same tasks, regardless of which call center they are employed in, and any difference in title primarily reflects the tenure of the CSA. All CSAs are paid on an hourly basis.

6. Defendant employed Plaintiffs as a CSAs during the past three (3) years at its brick-and-mortar call center in Lincoln, Nebraska.

7. Defendant requires its CSAs to work a set, full-time schedule. However, Defendant does not begin compensating CSAs until they have started up their computers and logged into all of the necessary computer applications. This policy results in CSAs not being paid for all time worked, as promised by Defendant, and for all of their overtime compensation in violation of the FLSA.

8. Defendant's CSAs use multiple computer programs, software programs, servers,

---

[1] *See*, https://nelnetinc.com/careers/customer-support/ (last visited on 5/20/20).

and applications in the course of performing their responsibilities at the call centers. These programs, servers, and applications are an integral and indispensable part of their work, as they cannot perform their job without them.

9. Defendant's CSAs' jobs described herein are non-exempt positions.

10. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's CSAs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2.

11. In order to perform their jobs, Plaintiffs and the other CSAs are required to start-up and log-in to various computer programs, software programs, servers, and applications in order to access information and software. The start-up/log-in process took substantial time on a daily basis with said time ranging from ten (10) to twelve (12) minutes per day, but extending even longer on days when Plaintiff and other CSAs experience technical issues related to Defendant's computers, software or programs.

12. Plaintiff and the other CSAs are not actually "clocked in" for their shift until *after* the computer start-up/log-in process is complete and they log into the applicable programs, software, servers, and applications, meaning that Plaintiff and other CSAs work at least ten (10) to twelve (12) minutes each per shift that they are not compensated for, as promised by Defendant. This off-the-clock time that Defendant's CSAs spent starting up and logging into each session directly benefits Defendant and this process is an essential part of each CSAs' job responsibilities.

13. Defendant provides CSAs with one unpaid 45-minute lunch break per shift.

Defendant requires CSAs to clock-in and out of the time keeping system for all lunch breaks.

14. Defendant, however, requires its CSAs to perform off-the-clock, unpaid work functions during the unpaid lunch breaks including, but not limited to, logging into Defendant's computer programs, software programs, servers, and applications. Many of the computer programs utilized by Plaintiff and the other CSAs have an auto-log out feature that logs the CSA out if they remain idle for too long. Defendant also instructed CSAs to log themselves out of many of the computer applications. Consequently, Plaintiff and other CSAs often return for lunch and are required to redo some or all of the ten (10) to twelve (12) minute boot-up process during their lunch breaks and while they were off-the-clock.

15. Between the pre-shift start-up/log-in process and the log-in/off during lunch period time, Defendant fails to pay Plaintiff an amount equal to at least ten (10) to twenty four (24) minutes of compensable time *per shift*. Additionally, Defendant failed to compensate Plaintiff for other off-the-clock time spent performing work duties during their lunch breaks, such as answering questions of supervisors and assisting other team members.

16. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

17. Defendant knew or could have easily determined how long it took for the CSAs working at the call centers to complete the pre-shift start-up/log-in process, and the lunch break work duties, and Defendant could have properly compensated Plaintiffs and other CSAs for the

work they performed, but did not.

18. Plaintiffs bring this action on behalf of themselves and all other similarly situated hourly CSAs who worked for Defendant at any call center in the United States, to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

19. This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

20. Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

21. Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's CSAs engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

22. This Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367 because it arises under the same facts as their federal claims.

23. This Court has personal jurisdiction over Defendant because Defendant's headquarters are in this district and Defendant resides in this district.

24. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides in this district, and a substantial portion of the decisions and policy-making that give rise to the Plaintiffs' claims occurred in this district.

## INTRADISTRICT ASSIGNMENT

25. A substantial part of the events or omissions giving rise to the claims alleged herein

occurred in Lincoln, Nebraska; therefore, this action is properly assigned to the Lincoln Division.

## PARTIES

26. Plaintiff Michelle Keylon is a resident of Beatrice, Nebraska and was employed by Defendant as an hourly CSA at the Defendant's call center in Lincoln, Nebraska. She was employed as a CSA by Defendant from approximately January 2017 to September 2018. Plaintiff Keylon signed a consent form to join this lawsuit, which is attached hereto as *Exhibit A*.

27. Plaintiff Alexus Gerdes is a resident of Beatrice, Nebraska and was employed by Defendant as an hourly CSA at the Defendant's call center in Lincoln, Nebraska. She was employed as a CSA by Defendant from approximately February 2018 to August 2018. Plaintiff Keylon signed a consent form to join this lawsuit, which is attached hereto as *Exhibit B*.

28. Defendant Nelnet, Inc. is a Nebraska corporation (Sos Id: 0425737) with a Principal Office at 121 S. 13th Street, Suite 100, Lincoln, Nebraska 68508. Defendant's registered agent and registered agent address is CT Corporation System, 5601 South 59th Street, Suite C, Lincoln, Nebraska 68516.

## GENERAL ALLEGATIONS

29. As stated above, Defendant employs its CSAs in several call centers across the country.

30. The job duties of CSAs are the same or similar from call center to call center, as evidenced by the similar or even identical job postings on Defendant's website for different locations. Additionally, the required qualifications for the CSA jobs are the same or similar at each call center location. *Exhibit C*, Job Postings with Position Description.

31. Defendant compensates CSAs on a bi-weekly basis and pays them a base hourly rate. Plaintiff Keylon's most recent hourly rate was $14.76 per hour.

32. Plaintiff and the other CSAs assist Defendants customers in student loan servicing or business process outsourcing. *See*, https://nelnetinc.com/careers/customer-support/ (last visited on 5/20/20).

33. Defendant boasts its customer support services and claims "Nelnet's Customer Interaction Center provides unmatched customer service to federal student loan borrowers. These associates handle incoming borrower interaction and solve problems over the phone and via webchat." *Id*.

34. Similarly, Defendant claims that "Nelnet mastered the art of customer support with loan servicing, so we thought we'd up the ante by providing that same support for other companies. Business Process Outsourcing (BPO) team members communicate and assist customers from a variety of outside businesses, including the Arbor Day Foundation, HomeAdvisor, ACE Energy, and more." *Id*.

35. Plaintiffs assisted Defendant's student loan customers, however, regardless of whether CSAs were assisting with student loans or business loans their job responsibilities and duties were the same or extremely similar.

36. According the uniform job descriptions provided by Defendants, the job responsibilities of CSA were to "[r]espond to incoming borrower interactions (inbound & outbound calls, web chats) and provide follow up on inquiries as needed." **Exhibit C**.

37. In order to carry out their job duties CSAs are required to utilize nearly a dozen computer programs that are integral and indispensable to their job duties.

**Pre-Shift Off-the-Clock Work**

38. Defendant records the hours worked by CSAs using a computerized timekeeping system called Time Clock Plus.

7

39. At the start of the shift, the CSAs must enter the building and proceed to their work station.

40. After locating a work station, the CSAs engage in ten (10) to twelve (12) minutes of pre-shift off-the-clock work booting up their computers, which begins with a cold-start (the computer is completely shut down), followed by the loading and logging into several programs, and concluding with CSAs logging into Defendant's time keeping system (Time Clock Plus). This process can often take even longer, particularly if the CSA experiences technical difficulties with the computer systems.

41. First, CSAs must turn on their computer and wait for Windows to load, then enter a username and password. Once logged into Windows, the CSAs must load and log into all of their work programs so they are prepared to take calls the moment they clock in. This includes, but is not limited to, opening the following essential computer programs in chronological order:

   a. Workspace – a program used for looking up personal information on Defendant's borrowers;
   b. nService – a program actually contains three sub-programs known as "ED," "DEN," and "JAX" which are programs used for checking individual accounts and additional information on borrowers;
   c. Filenet – a program used to manage various business processes;
   d. Enterprise – another program used to assist borrowers with information regarding their loans; and
   e. Time Clock Plus – Defendant's time keeping software.

42. CSAs are expected to have all of the aforementioned programs up and running before they clock-in and begin taking calls from customers.

43. As stated above, CSAs spend ten (10) to twelve (12) minutes loading and logging into essential computer programs *before* they are able to log into the timekeeping system and begin getting compensated. This process takes even longer if the CSA experiences technical difficulties, which often requires the CSA to perform one or more restarts on the computer.

8

**Mid-Shift (Lunch) Off-the-Clock Work**

44. Defendant provides CSAs with a one forty five (45) minute unpaid lunch during the standard eight (8) to ten (10) hour shifts.

45. At the start of their lunch period, Defendant required CSAs to log out of *all* of their computer systems (including the time keeping system), then lock their computers and begin their lunch.

46. Consequently, when CSAs return from lunch to their workstations, they must redo the computer boot-up process outlined above and this process results in up to an additional ten (10) to twelve (12) minutes of off-the-clock work, depending on how much of the boot-up process they need to redo.

**The Time Spent Loading and Logging into Computer Programs is Compensable**

47. Throughout their employment with Defendant, Plaintiffs and the CSAs regularly worked off-the-clock as part of their jobs as CSAs.

48. Between the pre-shift start-up/log-in process and the lunch period log-in process, Defendant failed to pay Plaintiffs and other CSAs an amount equal to at least twenty (20) to twenty four (24) minutes of compensable time per shift. Additionally, Defendant failed to compensate Plaintiffs and other CSAs for off-the-clock time spent performing other work duties during their lunch breaks, including answering questions from supervisors and assisting other team members.

49. At all relevant times, Defendant was able to track the amount of time that Plaintiffs and the other CSAs spent in connection with the pre-shift and lunch break work activities; however, Defendant failed to document, track, or pay Plaintiffs and other CSAs for the work they performed in connection with each shift.

50. Defendant knew or could have easily determined how long it took for the Plaintiffs

and the other CSAs to complete the pre-shift start-up/log-in process and the lunch break work duties, and Defendant could have properly compensated Plaintiffs and other CSAs for the work that they performed, but did not.

51. At all relevant times, Defendant was Plaintiffs' "employer" and Defendant directed and directly benefited from the work performed by Plaintiffs and other CSAs during the pre-shift start-up/log-in process and in connection with the mid-shift off-the-clock work during their meal breaks.

52. At all relevant times, Defendant controlled Plaintiffs and other CSAs' schedules, duties, protocols, applications, assignments, and employment conditions.

53. At all relevant times, Plaintiffs and all other CSAs were non-exempt hourly employees, subject to the requirements of the FLSA.

54. At all relevant times, Defendant used their attendance and adherence policies against the CSAs in order to pressure them into performing off-the-clock work.

55. At all relevant times, Defendant promised to pay Plaintiffs and the other CSAs for all hours worked, which includes work that occurred outside of their scheduled shift, such as the boot up time discussed herein.

56. At all relevant times, Defendant's policies and practices deprived Plaintiffs and other CSAs of wages owed for off-the-clock work that Plaintiffs and other CSAs performed. Because Plaintiffs and other CSAs typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived Plaintiffs and other CSAs of overtime pay at a rate of 1.5 times their regular rate of pay, as required under the FLSA.

57. Defendant knew or should have known that Plaintiffs' and other CSAs' time spent in connection with the off-the-clock activities set forth herein were compensable under the FLSA.

**The Off-the-Clock Results in FLSA Overtime Violations**

58. Defendant pays CSAs on a bi-weekly basis.

59. Plaintiff and other CSAs are employed on a full-time basis, regularly work forty (40) or more hours in a workweek, and generally work five (5) shifts in a single week.

60. Because Plaintiff and other CSAs must perform a minimum of ten (20) minutes of off-the-clock work per day, or one hour per week, on any work week they work over 39.01 hours, they will have an unpaid overtime claim since Defendant does not include that one hour in the CSAs' compensable time. This is a best case scenario for Defendant.

61. As stated above, based on Plaintiffs' personal experience, twenty (20) minutes per day is the minimum amount of off-the-clock work that occurred every day.

## COLLECTIVE ACTION ALLEGATIONS

62. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All similarly situated current and former hourly customer service advisors who worked for Defendant at any call center in the United States, at any time during the last three years.*

(hereinafter referred to as the "putative collective members"). Plaintiffs reserve the right to amend this definition as necessary.

63. Plaintiffs' FLSA claim should proceed as a collective action because Plaintiffs and putative collective members, having worked pursuant to common compensation policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

64. Plaintiffs and putative collective members are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the

11

same unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

65. The key legal issues are also the same for putative collective members, to wit: whether the off-the-clock time they spend in connection with performing pre-shift and lunch break activities is compensable under the FLSA.

66. Plaintiffs estimate that the putative collective members, including both current and former employees over the relevant period, will include several hundred members. The precise number of putative collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

67. Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All similarly situated current and former hourly customer service advisors who worked for Defendant at any call center in United States, at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiffs reserve the right to amend this definition as necessary.

68. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

69. There is a well-defined community of interest among Rule 23 Nationwide members and common questions of law and fact predominate in this action over any questions affecting

individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

    a.    Whether the pre-shift time that Rule 23 Nationwide Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

    b.    Whether the time that Rule 23 Nationwide Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in, is compensable time; and

    c.    Whether Defendant was unjustly enriched by failing to pay Plaintiff and the Rule 23 Nationwide Class members for this pre- and mid-shift time at their agreed upon rate.

70. Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

71. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

72. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

73. This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

74. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

75. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (Alleging Violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*)

76. Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

77. At all times relevant to this action, Defendant was Plaintiffs' employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

78. Defendant engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

79. At all times relevant to this action, Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

80. Plaintiffs' either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

81. At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

82. At all times relevant to this action, Defendant required Plaintiffs and all similarly situated current and former Class members to perform at least ten (10) to twelve (12) minutes of pre-shift start-up/log-in activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

83. At all times relevant to this action, Defendant failed to compensate Plaintiffs and all similarly situated current and former Class members for ten (10) to twelve (12) minutes of off-the-clock, unpaid work activities they performed during their lunch breaks.

84. The off-the-clock work performed by Plaintiffs and all similarly situated Class members every shift is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

85. In workweeks where Plaintiffs and other Class members worked 40 hours or more, the uncompensated off-the-clock time should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage. *See* 29 U.S.C. § 207.

86. Accordingly, Defendant's uniform pay practices and policies for CSAs systematically and routinely violated the FLSA.

87. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for their CSAs to perform the off-the-clock pre-shift and lunch break activities, and Defendant could have properly compensated Plaintiff and the Class for the work they performed, but did not.

88. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act,

an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### (Rule 23 Nationwide Class Action)
### Nationwide Breach of Contract

89. Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

90. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on Defendant's behalf.

91. Defendant's contractual promises to pay Plaintiffs and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiffs and the Rule 23 Nationwide Class members.

92. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, has an hourly rate of between $14.00 and $16.00 per hour.

93. Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift and meal period activities, described herein.

94. By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-

clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

95. Plaintiffs' and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

96. As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 Nationwide Class have been damaged in an amount to be determined at trial.

## COUNT III
### (Rule 23 Nationwide Class Action)
### Unjust Enrichment

97. Plaintiff re-alleges and incorporates all previous paragraphs herein.

98. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

99. At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

100. Plaintiffs and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

101. By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

102. Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

103. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

104. Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

105. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

106. Plaintiffs and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

107. As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs Michelle Keylon and Alexus Gerdes requests the following relief:

    a. An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

    b. An Order certifying this case as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach

    of contract and unjust enrichment claims (Counts III and IV);

c. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA putative collective members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. An Order designating Plaintiffs as the representatives of the FLSA collective, the Rule 23 Nebraska Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

e. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. An Order declaring Defendant is in breach of a contract with Plaintiff and the Rule 23 Nationwide Class to pay them at a predetermined agreed upon rate for all hours worked;

g. An Order declaring Defendant was unjustly enriched by failing to pay Plaintiff and the Rule 23 Nationwide Class for all wages earned;

h. An Order declaring Defendant's violation of the FLSA was willful;

i. A Judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective, the Rule 23 Nebraska Class, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

j. An award of reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

k. An award of pre- and post-judgment interest to Plaintiff on these damages; and

l. An Order awarding such other and further relief as this Court deems appropriate.

*[Jury demand and signature of Counsel on following page.]*

## **JURY DEMAND**

Plaintiff demands a jury trial.

Dated: June 1, 2020

Respectfully submitted,

/s/ *Kelly Brandon, Esq.*
Kelly Brandon, NE Bar No. 20734
Aimee Bataillion, NE Bar No. 22190
Fiedler Law Firm, PLC
20615 Hwy 370
Gretna, NE 68028
Phone: (402) 316-3060
kelly@employmentlawnebraska.com
aimee@employmentlawnebraska.com

Jason Thompson (*pro hac vice* forthcoming)
Charles R. Ash (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
jthompson@sommerspc.com
crash@sommerspc.com

*Attorneys for Plaintiff and the Putative Class/Collective Action Members*